IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                          Case No. 13-CR-03890-MV

GREG COTINOLA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on defendant Greg Cotinola's pro se Motion to Reduce Sentence for Immediate Compassionate Release [Doc. 134] and Amended Motion Due to COVID-19 Virus [Doc. 137]. The government filed responses in opposition to both motions [Docs. 138, 142] and submitted a sealed appendix containing 739 pages of Mr. Cotinola's medical records from the Bureau of Prisons (BOP) [Doc. 139]. Mr. Cotinola did not file a reply. Having reviewed the briefing, exhibits, relevant law, and being otherwise fully informed, the Court finds that Mr. Cotinola's motions are well taken and will be **GRANTED**. Exercising its authority to modify Mr. Cotinola's sentence for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i), the Court will reduce his term of imprisonment to time served and impose a 12-month period of home detention so that he can receive treatment for his end-stage kidney failure and other serious medical conditions in the care of his sister rather than in the custody of the BOP.

## BACKGROUND

This case began with Mr. Cotinola's arrest on November 7, 2013, after agents with the Drug Enforcement Agency (DEA) executed simultaneous search warrants on his home, his business, and a stash house to which he was connected in Albuquerque, New Mexico. *See* Doc.

143 at ¶¶ 23–27.  The DEA obtained the warrants after gathering evidence that Mr. Cotinola was involved in trafficking methamphetamine in the Albuquerque area.  *See id*. at ¶¶ 10–22.  He later pled guilty to Count 1 of a five-count Indictment charging him with Possession with the Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  *See* Docs. 47, 49.  On February 18, 2015, this Court sentenced Mr. Cotinola to 12 years of imprisonment in the BOP pursuant to a Rule 11(c)(1)(C) plea agreement.[1]  *See* Doc. 49 at 3, Doc. 75 at 1–2.  His current release date is July 8, 2024.  *See* Doc. 138 Ex. 1.

Although Mr. Cotinola's health appeared relatively stable at sentencing [*see* Doc. 143 at ¶ 116–20], it has significantly deteriorated since his imprisonment in the BOP.  His sister, Francine Cotinola, reports that since his incarceration, Mr. Cotinola has suffered from multiple heart attacks, neuropathy, diabetes, Hepatitis C, and kidney failure.  *See* Doc. 134 at 11.  As a result, she reports that on several occasions, she "did not know whether he would live or die." *Id*.  The voluminous medical records submitted by the parties support Ms. Cotinola's account.  They show, among other things, that in September 2017 Mr. Cotinola was found unconscious and without a pulse after suffering a heart attack at the United States Penitentiary in Victorville, California (USP Victorville).  *See* Doc. 134 at 105.  An ambulance was called and Mr. Cotinola was rushed to a nearby hospital, where emergency doctors saved his life.  *Id*.  Mr. Cotinola then underwent emergency stent placement surgery after doctors discovered that several arteries surrounding his heart had narrowed by 95%.  *See id*. at 107.  Sometime later in his term of imprisonment, Mr. Cotinola was diagnosed with chronic kidney disease secondary to type-II diabetes and high blood pressure.  *See* Doc. 138 Ex. 2 at 379.  Unfortunately, Mr. Cotinola's kidney disease has now

---

[1] Mr. Cotinola was sentenced by a visiting judge, the Honorable Michael J. Reagan.

progressed to end-stage renal failure, meaning that he is dependent on kidney dialysis to live. *See id*. at 18. He is currently housed at the United States Medical Center for Federal Prisoners in Springfield, Missouri (Springfield Medical Center) where he receives dialysis three times a week. *See id*. at 34. Recent medical records from the BOP list a total of 13 "health problems" for Mr. Cotinola overall, including type-II diabetes, hypertension, hypothyroidism, atherosclerosis, acute kidney failure, end-stage renal disease, enlarged prostate with urinary tract symptoms, dependence on renal dialysis, and acute ischemic heart disease, among other things. *See id*. at 74. To manage these conditions, Mr. Cotinola takes as many as 14 different medications on a daily basis. *See id*. at 74–75.

Before filing the instant motion, Mr. Cotinola applied to the BOP for compassionate release. *See* Doc. 134 at 17. The warden of the Springfield Medical Center failed to timely respond and a regional official denied his request upon appeal. *See id*. Mr. Cotinola then received a final denial from the BOP's Administrator for National Inmate Appeals on December 10, 2019. *See id*. at 16. The denial letter states that while Mr. Cotinola suffers from a number of chronic medical conditions including "ischemic cardiac disease, diabetes, hypertension, Hepatitis C, and dialysis dependent kidney disease," he does not meet the BOP's definition of being in a "debilitated medical condition" warranting release because he is able to "complete self-care activities independently," he is not "completely disabled" or "confined to a bed or chair for more than 50 percent of [his] waking hours," and there is no indication that his medical conditions "affect [his] ability to function in a correctional facility." *See id*.

Having exhausted his administrative remedies within the BOP, Mr. Cotinola filed his pro se Motion to Reduce Sentence for Immediate Compassionate Release in this Court on April 3, 2020. *See* Doc. 134. In it, he asks the Court to reduce his sentence to time served under 18 U.S.C.

§ 3582(c)(1)(A) so that he can live with his sister Francine, who has offered to house and care for him. *See id*. at 1, 7. Then, on April 30, 2020, Mr. Cotinola filed an amended motion asking the Court to take the COVID-19 pandemic into consideration when ruling on his request for compassionate release. *See* Doc. 137 at 1. He represents that he is currently housed on a floor with over 100 other inmates and sleeps in an open five-man cell, making it impossible to practice social distancing. *Id*. Mr. Cotinola also points out that he is now 53 years old and is at a heightened risk of suffering complications were he to contract the virus due to his compromised immune system. *See id*.

In response, the government concedes that Mr. Cotinola has exhausted his administrative remedies and is eligible to apply for relief in this Court. *See* Doc. 138 at 2. It nevertheless argues that he has not met the applicable definition of "extraordinary and compelling reasons" warranting compassionate release because his medical conditions, while serious, are not "terminal illnesses with end of life trajectories" and because he has not lost the ability to care for himself while in prison. *See* Doc. 138 at 4. The government additionally argues that even if Mr. Cotinola qualifies for compassionate release, the Court should deny his request under the factors set forth in 18 U.S.C. § 3553(a) and because he remains a danger to the community. *See id*. at 5–8.

## STANDARD

Under 18 U.S.C. § 3582(c)(1)(A)(i), federal courts are permitted to reduce a defendant's term of imprisonment and/or modify their conditions of supervised release if, after a consideration of the factors set forth in 18 U.S.C. § 3553(a), "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Prior to the passage of the First Step Act of 2018, only the director of the BOP could move for a reduction under the statute, leaving federal prisoners powerless to apply for compassionate release on their own behalf. *See* First Step Act of 2018, Pub.

L. No. 115-391, 132 Stat. 5194, 5239 (2018).  However, in a section of the Act titled "Increasing the Use and Transparency of Compassionate Release," Congress amended the law to allow defendants to move for sentence reductions under § 3582(c)(1)(A)(i) once they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id*.

Since the passage of the First Step Act, courts have disagreed about what constitutes "extraordinary and compelling reasons" warranting relief.  Some courts, including the Tenth Circuit, have continued to look to a policy statement from the United States Sentencing Commission listing several circumstances in which qualifying reasons exist. *See, e.g., United States v. Saldana*, 2020 WL 1486892, at *2 (10th Cir. Mar. 26, 2020) (unpublished) (applying U.S.S.G. § 1B1.13); *United States v. Willis*, 382 F. Supp. 3d 1185, 1187–88 (D.N.M. 2019) (same). Under the policy statement, extraordinary and compelling reasons exist where the defendant is suffering from a "terminal illness."  *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(i).  Although "terminal illness" is defined as "a serious and advanced illness with an end of life trajectory," the policy statement makes clear that a specific prognosis of life expectancy is not required.  *See id*.  The statement then lists examples of qualifying terminal illnesses, including "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."  *Id*. A defendant can also demonstrate "extraordinary and compelling reasons" under the policy statement if they have a "serious physical or medical condition" that "substantially diminishes [their] ability… to provide self-care within the environment of a correctional facility and from which [they] are not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).  To qualify for a sentence reduction, the defendant must also show that they are "not a danger to the safety of any

5

other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* U.S.S.G. § 1B1.13(2).

Other courts have held that because the policy statement in question predates the First Step Act and refers only to motions brought by the director of the BOP, it is no longer an "applicable policy statement" that courts must consider under § 3582(c)(1)(A) and should not therefore limit the meaning of "extraordinary and compelling reasons" warranting relief. *See, e.g., United States v. Brown*, 411 F. Supp. 3d. 446, 449–51 (S.D. Iowa 2019) (listing cases).

Despite their disagreements about the precise definition of "extraordinary and compelling reasons" justifying compassionate release, many courts over the past two months have agreed that such reasons exist in cases involving defendants whose serious underlying health conditions place them at an elevated risk of infection and death from COVID-19 while in custody. *See United States v. McCarthy*, No. 3:92-CR-0070 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (unreported) (listing cases releasing defendants with risk factors for COVID-19, including asthma, diabetes, and compromised immune systems).

## DISCUSSION

First, the Court agrees with the parties that Mr. Cotinola is eligible to apply for relief under § 3582(c)(1)(A) because he has "fully exhausted his administrative rights to appeal [the] failure of the Bureau of Prisons to bring a motion on [his] behalf." *See* Doc. 134 at 16–17 (BOP denials of Mr. Cotinola's administrative request for compassionate release); Doc. 138 at 2 (government conceding administrative exhaustion).

Moving to the merits, the Court finds that Mr. Cotinola's serious medical conditions qualify as "extraordinary and compelling reasons" warranting compassionate release under § 3582(c)(1)(A)(i) and the Sentencing Commission's guidance in U.S.S.G. § 1B1.13. Specifically, the Court finds that Mr. Cotinola's dialysis-dependent end-stage kidney failure falls within the

Commission's definition of a qualifying "terminal illness." *See* § 1B1.13 cmt. n.1(A)(i). There is no doubt that Mr. Cotinola's kidney failure is a "serious and advanced illness;" it has unfortunately advanced to the final stage. *See* Doc. 138 Ex. 2. The government nevertheless argues that Mr. Cotinola's illness does not qualify as "terminal" within the meaning of the policy statement because he is currently stable due to the dialysis he receives three times a week. *See id*. at 4. The government's reading of the policy statement is overly narrow, however, and ignores two key points. First, the Sentencing Commission specifically notes that an illness need not have a specific prognosis of life expectancy, "*i.e.*, a probability of death within a specific time period," to be considered "terminal." *See* § 1B1.13 cmt. n.1(A)(i). Second, and more importantly, the Commission specifically lists "end-stage organ disease" as an example of a qualifying terminal illness under the statement. *See id*. Mr. Cotinola's end-stage kidney disease therefore fits squarely within the Sentencing Commission's definition of what constitutes "extraordinary and compelling reasons" warranting his compassionate release. *Id*.

The Court additionally finds that Mr. Cotinola's end-stage kidney failure constitutes a "serious physical or medical condition" that "substantially diminishes [his] ability… to provide self-care within the environment of a correctional facility and from which [he is] not expected to recover." § 1B1.13 cmt. n.1(A)(ii). In concluding that Mr. Cotinola does not qualify for compassionate release under this provision, the BOP and the government adopt a limited view of what it means to be able to "provide self-care within the environment of a correctional facility." *See* Doc. 134 at 16, Doc. 138 at 4. What the record shows is that in order to function and survive in the BOP, Mr. Cotinola had to be transferred to a federal medical center, where he is dependent on constant medical care including dialysis three times a week, the daily administration of as many as 14 medications, and regular consultations and lab work to monitor his condition. *See generally*

Doc. 138 Ex. 2. By necessitating the comprehensive level of care he now receives, Mr. Cotinola's medical conditions have "substantially diminished" his ability to care for himself within the meaning of the policy statement. *See* § 1B1.13 cmt. n.1(A)(ii).

Finally, the Court cannot ignore the fact that Mr. Cotinola's numerous medical conditions make him particularly vulnerable to serious illness or even death from the COVID-19 virus sweeping through federal prisons across the country, a precarious situation that a growing number of federal courts have found to constitute an "extraordinary and compelling" reason warranting relief. *See McCarthy*, 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (unreported) (listing cases releasing defendants with underlying medical conditions due to COVID-19).

The Court further finds that reducing Mr. Cotinola's term of imprisonment to time served and imposing a reasonable period of home confinement is supported by the factors set forth in 18 U.S.C. § 3553(a). The offense in this case was undoubtedly serious: by distributing large amounts of methamphetamine in the Albuquerque area, Mr. Cotinola contributed to the devastating harm drugs have wrought on our community. He has now paid for that conduct with over six and a half years of his life, and the Court does not believe that requiring him to remain in prison for another four years while on dialysis would meaningfully advance the goals of sentencing. Instead, the Court believes that allowing Mr. Cotinola to be released to the care of his sister, under an initial condition of home detention, would continue to impose just punishment for his offense while also promoting Mr. Cotinola's rehabilitation and ensuring that he is provided with the medical care he needs "in the most effective manner" available. *See* § 3553(a)(1)(D). A United States Probation Officer recently spoke to Ms. Cotinola, who reaffirmed her desire to have Mr. Cotinola live with her so that she can care for him. *See* Doc. 144 at 1. Mr. Cotinola's other sister, Kathy Polaco, also lives next door and will be able to assist with his care. *See id.* The United States Probation Office

can additionally help coordinate Mr. Cotinola's medical care and help him obtain any Medicaid assistance to which he is entitled.  Ultimately, the Court believes that the six and a half years Mr. Cotinola has spent in the BOP, much of it in poor health, have been sufficient to achieve the purposes of sentencing set forth in § 3553(a) and that any additional time Mr. Cotinola spends incarcerated would be "greater than necessary."  *See* § 3553(a).

Finally, the Court finds that Mr. Cotinola no longer poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  *See* U.S.S.G. § 1B1.13(2).  Mr. Cotinola's criminal history is admittedly troubling, and the Court is disturbed by the acts of violence he committed against several women in his life when he was younger.  *See* Doc. 143 at ¶¶ 71–78.  However, the majority of Mr. Cotinola's criminal history occurred over 20 years ago, and his last conviction for a violent offense occurred in 2002 when he was 35.  *See id*. at ¶ 78.  Mr. Cotinola is now 53 years old and is afflicted with the multitude of life-endangering medical conditions described above.  Given Mr. Cotinola's poor health and his dependence on dialysis in particular, the Court does not believe that he poses a threat to public safety.  The Court also notes that he will be in home detention with location monitoring upon release from the BOP and will be under the supervision of probation during the duration of his term of supervised release.  If Mr. Cotinola violates any of the conditions of his supervision, the Court has the authority to send him back into custody.  *See* 18 U.S.C. § 3583(e)(3).

## CONCLUSION

For the reasons stated above, Mr. Cotinola's pro se Motion to Reduce Sentence for Immediate Compassionate Release [Doc. 134] and Amended Motion Due to COVID-19 Virus [Doc. 137] are hereby **GRANTED**.  Exercising its authority under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, the Court will reduce Mr. Cotinola's term of

imprisonment to time served and modify his conditions of supervised release to include a 12-month period of home detention at his sister's residence, which the Court can modify or reduce as future circumstances may warrant. *See* 18 U.S.C. § 3583(e)(2). An amended judgment reflecting Mr. Cotinola's modified sentence and conditions of supervised release will be filed after arrangements have been made for Mr. Cotinola's transportation and medical care.

ENTERED this 18th day of May, 2020.

_____
The Honorable MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE